*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

### ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-245

DECEMBER TERM, 2016

| | |
|---|---|
| In re C.R., Juvenile | } APPEALED FROM:<br>}<br>} Superior Court, Addison Unit,<br>} Family Division<br>}<br>} DOCKET NO. 11-1-15 Anjv<br><br>Trial Judge: Samuel Hoar, Jr. |

In the above-entitled cause, the Clerk will enter:

Father appeals the superior court's order terminating his parental rights with respect to his son, C.R. We affirm.

C.R. was born in November 2008 to parents who had a relationship fraught with domestic violence. When C.R. was approximately one and one-half years old, mother took the child to New York, where she obtained a parentage order that made her C.R.'s primary caregiver. She stayed in New York for approximately three-and-one-half years before returning to Vermont in 2014. The parties shared physical custody until July of that year when mother left C.R. with father. In October 2014, mother took the child to live with his maternal grandmother, where he has remained ever since.

On January 29, 2015, the Department for Children and Families (DCF) filed a petition to have C.R. adjudicated a child in need of care or supervision (CHINS) based on mother having left the child with a person—his grandmother—who had no legal authority to care for him. The same day that the petition was filed, the superior court issued an emergency order transferring custody of C.R. to DCF, which maintained the placement with the maternal grandmother. In April 2015, DCF filed an initial case plan with concurrent goals of reunification with either parent or adoption. The case plan recommended, among others things, that father undergo a substance abuse assessment and engage in domestic violence counseling. On June 23, 2015, after a number of hearings and status conferences in which mother failed to appear, the superior court held a merits hearing and adjudicated C.R. CHINS based on mother's stipulation.

One month after the CHINS adjudication, DCF filed a disposition case plan making the same service recommendations as the initial case plan but changing the goal to solely adoption. The disposition hearing was commenced on July 28, 2015, but was continued to allow the parties to prepare for a contested termination-of-parental-rights (TPR) hearing following DCF's filing of petitions seeking the termination of mother's and father's parental rights. As a consequence, the court did not adopt DCF's disposition case plan as a disposition order at any time prior to the TPR hearing. The TPR hearing was held over two days on March 29 and May 9, 2016. At the outset of the first day of the hearing, mother voluntarily relinquished her parental rights contingent upon father's rights being terminated. Following the completion of the hearing, the superior court

terminated father's parental rights, concluding that the best interests of C.R., pursuant to the criteria set forth in 33 V.S.A. § 5114(a), warranted terminating father's parental rights. The court found that father had failed to comply with the recommended services in the case plan, had not had any relationship with C.R. since May 2015, and would not be able to resume parental duties within a reasonable period of time from the perspective of the high-needs child.

On appeal, father argues that: (1) the delay in the superior court reviewing the case plan recommendations cannot be attributable to him, and thus his failure to abide by those recommendations may not be a ground for terminating his parental rights; and (2) the evidence does not support the court's finding that DCF had legitimate concerns justifying its case plan recommendations. According to father, because the case plan recommendations were not considered by the court before the disposition/termination hearing, he had no opportunity to challenge those recommendations, and therefore cannot be faulted for not having followed them. He contends that if the court had timely addressed the recommendations, he may well have come to understand what he needed to do for reunification. He further argues that there was conflicting evidence as to whether he had engaged in domestic violence and that no evidence indicated that he had a continuing drug problem or that any such problem impacted his parenting.

We find no merit to these arguments. With respect to father's second argument, there was ample evidence to support the superior court's finding that instead of working with DCF to address "legitimate concerns" expressed in the case plan, father responded by denying his need to comply with recommendations and disengaging with DCF. Although father minimizes his history of drug abuse and its impact on him and his family, he does not challenge the superior court's finding that he and mother first met through their mutual drug use and that they were both heroin users. Those facts alone support DCF's recommendation that father be required to participate in a substance abuse assessment. Notably, the case plan did not call for treatment, but only for father to participate in an assessment.

Moreover, while father and mother presented conflicting testimony regarding father's alleged domestic abuse, father does not challenge the court's findings, which were supported by mother's testimony, that father physically and emotionally abused mother throughout their relationship and that much of father's violent behavior occurred in the presence of C.R. See In re M.L., 2010 VT 5, ¶ 29, 187 Vt. 291 ("[I]t is the exclusive role of the family court to weigh the evidence and assess the credibility of the witnesses."). Father faults the court for asking C.R.'s therapist, who testified that C.R. told her he saw father being physically abusive, whether she considered C.R. to be a reliable reporter. He describes this exchange as an abdication of the court's responsibility to judge credibility, thus tainting the validity of its domestic violence finding. But even if the court were to discount the therapist's testimony, there was ample evidence of father's domestic abuse to justify requiring father to engage in domestic abuse counseling.

Regarding father's first argument, the fact that the disposition/termination hearing revealed evidence of father's drug use and domestic violence indicates that father was not prejudiced to the extent he had no opportunity to challenge the recommendations in the case plan because of delays not attributable to him. This is not a case in which the court found at disposition that DCF had not proven the facts on which it based its recommended services. To the contrary, the superior court found "incredible" father's denial of domestic violence and drug use and further found DCF's service recommendations to be based on "legitimate concerns."

Moreover, it is not father's failure to follow DCF's recommendations per se that support the court's termination decision; rather, it was father's actual, substantial parenting deficits,

coupled with his persistent denial of those problems and failure to take meaningful steps to address them over a long period of time, that was most important. The trial court referenced father's refusal to engage in services designed to equip him to resume parental duties, as well as "his persistent intransigence and narcissistic denial that he needs to do anything different to become the parent C.R. needs" in its best interests analysis. DCF's recommended case plan offered father a potential roadmap to mitigating his deficit parenting skills, but it is that deficit and the father's failure to address it despite the opportunity to do so, rather than the mere fact that he did not do what DCF recommended, that is critical here.

In any event, at a two-day hearing on father's motion for renewed visitation held in September and October of 2015, father presented detailed testimony concerning his relationship with mother, the reasons for many police visits to their home, his role in C.R.'s life during the six years leading up to the transfer of custody to DCF, and his relationship with C.R. He explained why he did not follow the recommendation of C.R.'s therapist that he attend a batterer's group before visits with C.R. could resume. Although the visitation hearing was not a full disposition hearing, father planned to call more witnesses at the hearing, but ultimately settled the matter by agreeing to certain conditions before the resumption of visits—that he meet at least twice with C.R.'s therapist to gain a better understanding of C.R.'s issues and the role his own behaviors had played in fostering or exacerbating C.R.'s anxieties, and that he engage in personal counseling to deal with his own issues. Despite this agreement, which resulted in a court order, father ultimately refused to comply with the conditions and, as a result, visits were not resumed.

In short, we discern no basis to reverse the superior court's termination order based on any delays in holding proceedings in the case. See In re D.D., 2013 VT 79, ¶ 24, 194 Vt. 508 ("Although disposition should occur within thirty-five days after a CHINS adjudication, 33 V.S.A. § 5317(a), this timeline is not mandatory.").

Affirmed.


BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice


3